Neville L. Johnson (SBN 66329)
Douglas L. Johnson (SBN 209216)
Frank R. Trechsel (SBN 312199)
**JOHNSON & JOHNSON LLP**
439 North Canon Drive, Suite 200
Beverly Hills, California 90210
Telephone: (310) 975-1080
Facsimile: (310) 975-1095
Email: njohnson@jjllplaw.com
djohnson@jjllplaw.com
ftrechsel@jjllplaw.com

David A. Helfant (California SBN: 93862)
**LAW OFFICES OF DAVID A. HELFANT**
1880 Century Park East, Suite 1011
Los Angeles, California 90067
Telephone: (310) 729-1353
Email: david@helfantlaw.com

Attorneys for Plaintiff, JARAED DEAL, p/k/a "JAE DEAL"

Zachary T. Bohlender (SBN 289334)
**BRIGHTPOINT LAW**
360 22nd Street, Suite 700
Oakland, California 94612
Telephone: (415) 638-2863
Email: zach@brightpoint.law

Attorneys for Plaintiff, MARLON BARROW, p/k/a "Marlonwiththeglasses"

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION**

JARAED DEAL, p/k/a "JAE DEAL," an individual, MARLON BARROW, p/k/a "Marlonwiththeglasses," an individual,

Plaintiffs,

vs.

KANYE OMARI WEST, a/k/a "YE," an individual; TYRONE WILLIAM GRIFFIN, JR., p/k/a "TY DOLLA $IGN," an individual; YEEZY RECORD LABEL, LLC, a California limited liability company; YEEZY LLC, a Delaware limited liability company; CREATE MUSIC GROUP, INC., a Delaware Corporation; and DOES 1 through 10, inclusive,

Defendants.

Case No. **2:26-cv-13035**

**COMPLAINT FOR:**

1. **COPYRIGHT INFRINGEMENT;**
2. **VICARIOUS INFRINGEMENT; and**
3. **CONTRIBUTORY INFRINGEMENT**

**DEMAND FOR JURY TRIAL**

Plaintiffs, Jaraed Deal, p/k/a "Jae Deal" ("Deal"), and Marlon Barrow, p/k/a "Marlonwiththeglasses" ("Barrow") (collectively referred to herein as "Plaintiffs"), hereby complain and allege as follows:

## NATURE OF THE ACTION

1. This action concerns the knowing, continuous, and blatant unauthorized use of the Sampled Works (as defined hereinbelow) and the unlicensed, uncredited, and unpaid use of Plaintiffs' writing, engineering, mixing, and producing services (collectively, the "Services") provided in connection with multiple commercially released sound recordings and underlying musical compositions, each entitled "Vultures," released as the Singles, and on the Album and the EP (as defined hereinbelow) and as further incorporated into remixes, edits, alternate versions and audiovisual works (collectively, the "Infringing Works," each an "Infringing Work") performed or created by or on behalf of Defendants, Kanye Omari West, a/k/a "Ye" ("West"), and Tyrone William Griffin, Jr., p/k/a "Ty Dolla $ign" ("Griffin"), and released and distributed by Yeezy Record Label, LLC ("Yeezy"), and Create Music Group, Inc. ("CMG") (jointly, severally and collectively referred to as "Defendants"), and used to promote merchandise incorporating intellectual property owned or licensed by and otherwise designed, manufactured and sold by Yeezy LLC, and other merchandise companies (collectively, "Yeezy Merch").

2. The "Sampled Works" consist of (i) a master sound recording entitled "Joint 2," and five individual, and separately mixed audio files called "stems," entitled "Rhodes," "Flutes," "Piano," "Brass," and "Strings" (collectively, the "Sampled Masters"), and (ii) the underlying musical composition (the "Sampled Composition") (collectively, the "Sampled Works").

3. Plaintiffs bring this action to redress Defendants' unauthorized reproduction, distribution, and commercialization of the Sampled Masters, Sampled Composition and Plaintiffs' Services (each defined hereinabove), for which Defendants neither obtained any rights from Plaintiffs nor provided both of them with compensation or the proper credit.

4. This action is not only about unpaid licensing fees and the lack of appropriate credit, but also about the essential right of any artist to determine when, how, and by whom their creative work is used. It concerns protecting artistic integrity, enforcing intellectual property rights, and preventing commercial exploitation by those who knowingly use a work without securing proper authorization.

## JURISDICTION AND VENUE

5. The Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. Sections 1331 and 1338(a) as a controversy arising under the Copyright Act and Copyright Revision Act of 1976 (17 U.S.C. Section 101, *et. seq.*), which, under exclusive jurisdiction of the federal courts, establishes federal question jurisdiction.

6. This Court has personal jurisdiction over all Defendants because each Defendant has purposefully engaged in activities related to the infringing conduct in the State of California. Defendants knew that their unauthorized use of Plaintiffs' Sampled Works would cause injury and damage in the State of California, where Plaintiffs reside and work as composers, producers, mixers, and recording artists. Furthermore, Defendants purposefully availed themselves of the privileges of conducting business in the State of California and invoking the benefits and protection of California's laws, rules and regulations.

7. Defendant West is believed to reside in the State of California and operates substantial business interests here, including through his entities, Yeezy Record Label LLC and Yeezy LLC.

8. Defendant Griffin also resides in the State of California and regularly conducts business as a singer, songwriter, rapper, and record producer in Los Angeles, California.

9. Defendant Yeezy Record Label LLC is a California limited liability company doing business as "YZY" or "YZY SND" with its principal place of business located in the State of California.

10. Defendant Yeezy LLC is a Delaware limited liability company with its principal place of business located in the State of California.

11. Defendant Create Music Group, Inc., is a Delaware corporation with its principal place of business located in the State of California.

12. Upon information and belief, there are other individuals and entities unknown to Plaintiffs, designated as Does 1 through 10, that may be liable or responsible in whole or in part for the allegations contained herein. Once the identity and capacities of these Doe Defendants are ascertained, Plaintiffs will amend and substitute their true names and capacities. Upon information and belief, Does 1 through 10, inclusive are legally responsible in some manner, either vicariously or by virtue of his, her, or its agents, representatives, or employees, for the acts and occurrences alleged herein, and has thereby proximately caused injury or damage to Plaintiffs.

13. Defendants including the fictitious doe defendants, and each of them, are sometimes collectively hereinafter referred to as "Defendants," unless otherwise specified herein. Plaintiffs are informed and believe and based thereon allege that, at all times material hereto, each of the Defendants, including the fictitiously named Defendants, was acting in an individual, corporate, partnership, associate, conspiratorial or other capacity or as the agent, employee, co-conspirator, and/or alter ego of its co-defendants, and in doing the acts herein alleged, was acting within the course and scope of its authority as such partner, associate, agent, employee, co-conspirator, or alter ego, and with the permission, consent, knowledge, authorization, ratification and direction of its co-defendants, including all fictitiously named defendants.

14. Defendants have further availed themselves of the music industry market in the State of California by promoting, distributing, and monetizing the Infringing Works to California residents through digital platforms accessible in this Judicial District. Upon information and belief, Defendants have also planned and/or conducted live performances in the State of California to support and promote the Infringing Works to the public.

15. In addition to specific jurisdiction, general jurisdiction exists over all of the Defendants, as they either reside in the State of California, are organized under its laws, maintain their principal place of business in the State of California, or engage in systematic and

continuous business activities within the State of California, including, but not limited to, the creation, production, performance, and sale of music and related content in Los Angeles County and throughout this District. By virtue of their consistent and ongoing commercial activity in this forum, Defendants could reasonably anticipate being hauled into court in this District in the State of California.

16. Venue is proper in the Central District of California pursuant to 28 U.S.C. §§ 1391(b) and 1400(a) because a substantial part of the events giving rise to the claims occurred in this District, and Defendants are subject to personal jurisdiction here. Additionally, the infringing acts, including recording, distribution, and the public performance of the Infringing Work occurred in or were directed to this District.

## **THE PARTIES**

17. Deal is a composer, producer, mixer, and recording artist, with a background in orchestration, musical arrangements, and audio engineering. Barrow is a producer, composer and studio owner, with a background in hip-hop and R&B, EDM and pop music production. Plaintiffs jointly own the Sampled Works, each owning and controlling a fifty percent (50%) interest therein. Both Plaintiffs reside in Los Angeles County in the State of California.

18. Defendant West is a highly acclaimed American rap performer who is a co-writer and producer of the Infringing Works and, based on information and belief, is a resident of the State of California residing in Los Angeles County.

19. Defendant Griffin is also a co-writer of the Infringing Works and, based on information and belief, is a resident of the State of California residing in Los Angeles County.

20. Defendants West and Griffin are renowned musicians who perform in the genre of rap music and who have both achieved monumental success within the music industry and in many other fields of entertainment and commerce.

21. Defendant Yeezy Record Label LLC is a California limited liability company with its principal place of business in Los Angeles County. Based on information and belief, Defendant Yeezy Record Label LLC is one of the music publishers, administrators, and co-owners of the Infringing Works.

22. Defendant Yeezy LLC is a Delaware limited liability company with its principal place of business in Los Angeles County. Based on information and belief, Defendant Yeezy has benefitted from using the Infringing Works and by marketing, promoting, distributing and selling VULTURES merchandise (the "Merchandise") using the Infringing Works.

23. Defendant CMG is a Delaware Corporation with its principal place of business in Los Angeles, California. CMG is a music distribution company that, based on information and belief, publicly distributes the Infringing Works.

**FACTUAL BACKGROUND**

24. On or about November 2018, Plaintiffs completed the Sampled Works in the course of their professional activities as songwriters and producers. As is customary in the music industry in writing and recording sessions, they created and developed the Sampled Works together with the understanding and intent that such works could later be developed, pitched, or presented to other artists and collaborators for potential inclusion on a larger work or forthcoming album.

25. The Sampled Masters and Sampled Composition are formally registered with the United States Copyright Office, as evidenced by Registration No. SRu 1-566-180, identifying 2018 as the year of completion of the Sampled Works and January 11, 2024, as the effective date of registration.

26. Barrow and Griffin have maintained a close personal and professional relationship spanning decades. During a phone call between Barrow and Griffin, Griffin heard the Sampled Works playing in the background on Barrow's end of the call. Griffin expressed interest in the Sampled Works playing over the phone and asked to visit Barrow's studio to listen to them, along with other songs.

27. Thereafter, Defendant Griffin asked for a copy of the Sampled Works to potentially use on his forthcoming album. Barrow provided Griffin with only an MP3 version of the Sampled Works via text message, with the understanding, consistent with industry practice, that higher-quality versions and stems would be provided only upon execution of a

written agreement governing the material terms and conditions of the use by the relevant parties involved.

28. Consistent with that understanding, Barrow did not provide Griffin with any stems or additional files in connection with the Sampled Works in response to Griffin's subsequent requests therefore, because no such agreement had ever been negotiated or executed.

29. Unbeknownst to Plaintiffs, and on information and belief, Defendant Griffin shared the MP3 of the Sampled Works with Defendant West.

30. Prior to the first commercial release of the Infringing Works, none of Defendants' representatives, whether directly or indirectly, ever contacted either Plaintiff to discuss a license, "work-made-for-hire" agreement, assignment of rights, compensation, credit, or any other form of written authorization to use the Sampled Works.

31. On or about November 18, 2023, Defendants commercially released two (2) separate master recordings containing the Sampled Works, each an Infringing Work. The first single features artists Bump J and Lil Durk (the "First Single"), and the second single solely features the artist Bump J (the "Second Single").

32. Both the First Single and Second Single are individually entitled "Vultures" (collectively, the "Singles") and were released on various Digital Service Providers ("DSPs"), including Spotify, Apple Music and other streaming platforms, without any authorization whatsoever from or compensation to Plaintiffs, and without according the appropriate credits to Plaintiff, Deal, for his Services in connection with the Infringing Works.

33. Barrow was accorded a producer credit, but received no compensation whatsoever. Deal was never accorded a producer credit nor paid any compensation whatsoever.

34. The Singles incorporate audibly recognizable and substantial portions of the Sampled Works.

35. The Singles were subsequently removed and re-released on November 22, 2023. Each Single has separate International Standard Recording Codes ("ISRC")[1], indicating they are distinct versions of "Vultures."

36. Shortly thereafter, Plaintiffs learned for the first time of the unauthorized release of these Infringing Works, and Barrow informed Deal that an additional Infringing Work containing the Sampled Works was to be placed on West's upcoming album.

37. Upon learning this, Plaintiffs immediately attempted to contact West's legal team through Barrow, as still no agreement regarding the use of the Sampled Works had been discussed, negotiated and/or executed.

38. On or about December 15, 2023, and after no communications from Defendant West, or his legal team, Deal attempted numerous times to remove the Singles through communications with various platforms, including Defendant, Create Music Group, YouTube, and Spotify. To date, and despite Deal's efforts, such Infringing Works remain publicly available for streaming, downloading, and purchase on these and other various platforms.

39. On or about January 11, 2024, Charles Misodi Njapa, professionally known as "88-Keys" and serving as the Head of Music at Defendant, Yeezy, contacted Plaintiffs to discuss their respective contributions to the Singles.

40. During this exchange, Plaintiffs clearly identified the elements of the Singles that they owned and created, and unequivocally affirmed that they retain ownership in and to both the musical compositions and master recordings of the Singles, as well as their Services contributed to the Singles.

41. Deal also expressly stated to 88-Keys that he, Deal, had not assigned any rights whatsoever to any party to distribute the Singles nor had he been compensated or credited for his Services.

---

[1] "ISRC enables sound recordings and music videos to be uniquely and permanently identified. ISRC helps to avoid ambiguity among recordings and simplifies the management of rights when recordings are used across different formats, distribution channels or products. The ISRC for a recording remains a fixed point of reference when the recording is used across different services, across borders, or under different licensing deals." - https://isrc.ifpi.org/en/.

42. Despite clear and repeated communications with 88-Keys, a representative of Defendant West, in which Plaintiffs expressly stated that the Singles contain elements solely owned by them and that they did not authorize any use or exploitation of those elements, Defendants made no effort to negotiate, execute, or even propose a license agreement, assignment, or "work-made-for-hire" arrangement.

43. Instead, Defendants proceeded to exploit the Singles without any permission whatsoever from Plaintiffs, and in total disregard of Plaintiffs' unequivocal ownership and refusal to authorize any use.

44. On or about February 6, 2024, the Singles, along with a third additional Infringing Work entitled "Vultures – Havoc Version," were released and/or re-released through Yeezy on an EP entitled "Vultures Pack" (the "EP"), despite there still being no compensation, credit, "work-made-for-hire" or assignment agreement ever executed by and between the parties. "Vultures – Havoc Version" and the other versions of "Vultures" appearing on the EP each have a distinct ISRC and constitute new additional infringing uses of the Sampled Works. This was the only additional release to the First Single between the date that the Digital Storefront was launched and February 12, 2024. The fact that the EP was comprised exclusively of Infringing Works further reinforces how critical they were to promoting the EP, the Merchandise and, eventually, the Album.

45. On information and belief, Yeezy Merch has grossed over $100 million sales from the Merchandise, largely driven by the goodwill from the initial promotional effort that was completely reliant on the Infringing Works and the fact that the Infringing Works and the Merchandise share a common name, seamlessly integrating the Singles, EP and Merchandise into a holistic multimedia project, a revolutionary approach that Defendant West has perfected and has come to be expected by his fans but which, as a corollary, makes the Infringing Works and the Merchandise parts of an indivisible whole in the eyes of the public.

46. Beginning on or about December 12, 2023, Defendant Yeezy Merch launched a digital storefront on yeezy.com with the official VULTURES Merchandise collection (the "Digital Storefront"). At such time, only the Singles had been commercially released and

which were instrumental in promoting the Listening Parties and the Merchandise in the Digital Storefront which, according to Defendant West's own public statements, sold over $19.3 million in Merchandise from December 12, 2023, to February 12, 2024

47. Beginning on that same day, and continuing until about March, 2024, Defendants West and Griffin hosted several listening parties and events in various locations around the world, including, without limitation, as sole headliners featured in the Rolling Loud California 2024 music festival (collectively, the "Listening Parties"), during which Defendants West and Griffin merely hit play on one or more Infringing Works for an audience of individuals who had purchased tickets to attend. On information and belief, Merchandise was sold at the Listening Parties. In the earliest Listening Parties prior to the Album's release, only the Singles and/or the EP were recognizable to the public, making them instrumental in promoting the Listening Parties, driving ticket sales and, consequently, leading to the purchases of Merchandise on location and on the Digital Storefront.

48. On information and belief, the Listening Parties, exclusive of the fees earned by West and Griffin for the Rolling Loud California 2024 music festival, grossed over $12 million in ticket sales and untold millions in Merchandise Sales from on-site purchases and purchases through the Digital Storefront.

49. On or about February 10, 2024, West and Griffin's joint album, "Vultures 1" (the "Album"), was released through Yeezy with the inclusion of an Infringing Work as the title track, despite Plaintiffs refusal to authorize such uses, and no compensation, credit, or written agreement ever executed by and between the parties.

50. The version of "Vultures" that appears on the Album has a distinct ISRC, indicating, it too, is a new additional infringement of the Sampled Works.

51. The next day, February 11, 2024, Defendants Yeezy and West created and paid for the broadcast of a local advertisement during the Super Bowl for the Album and the Merchandise (the "Vultures Super Bowl Ad"), once again part of indivisible multimedia project that had been promoted using, and sharing a common name with, the Infringing Works. Neither the mention of the Album nor the Merchandise in the Vultures Super Bowl Ad would

have had any name recognition for or pre-existing goodwill with the general public had it not been for the marketing, promotion and public consumption of the First Single and the EP prior thereto.

52. The Infringing Works, as included on the Album and the EP, and in addition to the Singles, were distributed publicly on streaming platforms, promoted commercially, and publicly performed numerous times since their release. Physical phonorecords of the Infringing Works were manufactured, distributed and sold as well, with the vinyl of the Album debuting at No. 1 on Billboard's Vinyl Albums chart.

53. Every Infringing Work released by Defendants contains audibly recognizable and significant portions of the Sampled Works within them.

54. Thus, after clear communications with Defendant, Yeezy outlining Plaintiffs' ownership in the Sampled Works and Plaintiffs' Services, as well as clearly stating that no party was authorized to release any Infringing Work, Defendants failed and refused to remove the Infringing Works or any versions thereof from the DSPs and other platforms, and continued with the release of the Infringing Work on the Album and the EP over Plaintiffs' numerous objections.

55. On or about February 15, 2024, Deal submitted a notice of copyright infringement to Exploration Group, LLC, a content ID administrator, to evidence his ownership rights in the Infringing Works.

56. On or about February 24, 2024, the Album reached No.1 on the Billboard 200 albums chart, which gave Defendant Griffin his very first No. 1 on the Billboard charts, and Defendant West his 11th No. 1 on the Billboard charts. The Album held the No. 1 position for an additional week.

57. On or about February 29, 2024, Deal submitted formal written notice to Defendant Create Music Group asserting Defendants' continued infringement of the Sampled Works, and Deal's name continues to be omitted from the credits as composer, producer and/or performer.

58. On or about March 20, 2024, Deal released the Sampled Works as a lawful owner to the public on various DSPs, including Spotify and Apple Music.

59. On or about October 2, 2024, Deal's then-attorney received an email from Defendant, Yeezy's then-attorney, with a buy-out settlement offer and, in response, Deal rejected the offer due to the known value of Plaintiffs Sampled Works and the offer's failure to redress the issues of willful infringement and lack of credit. Consequently, Deal demanded the immediate removal of the Infringing Works from all platforms until a fair and equitable agreement could be reached.

60. Throughout and around October and November 2024, Deal and his then-attorney engaged in multiple follow-up communications reiterating Deal's demand for appropriate credit, ownership of his portion of the Infringing Works, and the requisite compensation payable to Deal in recognition of his central role in the creation and production of the Infringing Works, and in light of the fact that the Infringing Works had been infringing Deal's and Barrow's original work for approximately one (1) year and had not been removed from the DSPs, despite Deal's continuous oral and written demands.

61. Despite these discussions and failed negotiations, upon information and belief, Defendants continue to promote and commercially exploit the Infringing Works through widespread digital distribution and streaming platforms, generating substantial revenue from streaming and download sales of the Infringing Works without any authorization or compensation whatsoever to Plaintiffs and without credit to Deal.

62. Upon information and belief, Defendants publicly claim ownership and authorship of portions of the Infringing Works that were, in part, created by Plaintiffs, including, without limitation, by submitting metadata that excludes and/or miscredits Plaintiffs and by registering the Infringing Works with the United States Copyright Office on July 9, 2025 (the "Vultures Copyright Registration") and, in so doing, omitting Plaintiff Deal as an author and falsely claiming that Plaintiff Barrow had assigned his rights in the copyright to the sound recordings and musical compositions embedded in the Infringing Works by contract. Defendants West and Griffin have actual knowledge that no written contract signed by Plaintiff

Barrow assigning his rights in the Infringing Works to any of the Defendants exists and possessed such knowledge at the time the Vultures Copyright Registration was made.

63. At the time of the filing of this Complaint, and upon information and belief, the Infringing Works have collectively amassed over one hundred and thirty million (130,000,000) streams on Spotify, which streams have played a material role in propelling West to the top of Spotify's global streaming charts, where he was ranked as the most-streamed artist following the release of the Album.

64. Video recordings of the Listening Parties have been circulated and continue to be widely circulated on digital platforms and the Internet, with some live recordings amassing hundreds of thousands of views on YouTube.

65. Defendants' unauthorized use of Plaintiffs' Services and the Sampled Works has generated substantial streaming revenue and promotional value for Defendants, and materially contributed to the heightened public visibility, commercial success, and perceived artistic value of the Album as a whole, all without Plaintiffs' consent or authorization and in blatant violation of their exclusive rights in and to the Sampled Works. In addition to the significant financial harm and damages suffered, Plaintiffs have endured severe emotional distress, frustration, and a profound sense of exploitation stemming from the misappropriation of their creative work and the blatant disregard for their artistic contributions and legal rights.

## FIRST CAUSE OF ACTION

**(Copyright Infringement)**

**(Against All Defendants)**

66. Plaintiffs repeat and re-allege each of the foregoing paragraphs as though fully set forth herein.

67. Plaintiffs share joint ownership of one hundred percent (100%) of the U.S. Copyright in the Sampled Masters, the master recording of "Joint 2," each of the five individual, and separately mixed audio files called "stems," entitled "Rhodes," "Flutes," "Piano," "Brass," and "Strings", and share joint ownership in one hundred percent (100%) of

the U.S. Copyright in the underlying Sampled Composition, collectively referred to herein as the “Sampled Works”.

68. Defendant, Griffin, requested and utilized Plaintiffs’ Services and Sampled Works for inclusion on his forthcoming album; however, Plaintiffs refused to authorize any use of the Sampled Works or their Services absent a proper agreement addressing their use, compensation, and credit. Plaintiff, Barrow, even withheld commercially standard stems and other higher-quality files pending execution of a written agreement, leaving Defendant G with only the MP3 file previously provided to him.

69. Thereafter, Defendants, West and Yeezy, collaborated with Defendant, Griffin, and obtained the Sampled Works in order to create the Infringing Works, including all versions released as the Singles, on the EP, and the Album. At no time did any Defendant seek Plaintiffs’ authorization or engage in any communication regarding the use of the Sampled Works. Furthermore, the Parties never executed any agreement providing that the results and proceeds of Plaintiffs’ services and the Sampled works were assigned or constituted “works-made-for-hire.” As such, any ownership in and to the Sampled Works, and consequently its inclusion in the Infringing Works, as well as the results and proceeds of Plaintiffs’ Services in and to the Infringing Works, is owned one hundred percent (100%) by Plaintiffs, with respect to the Sampled Masters, and one hundred percent (100%) with respect to the Composition.

70. Defendants, West, Griffin, and Yeezy’s Infringing Works incorporate audibly recognizable and substantial portions of the Sampled Works and would not exist without the Sampled Works or Plaintiffs’ Services contributing to the creation, production, engineering, and mixing of the Infringing Works.

71. Despite repeated written and oral notifications from Plaintiffs following the initial release of the Singles, explicitly stating that Defendants had no right or license to use the Sampled Works or Plaintiffs’ Services in any commercial recording, Defendants not only refused to remove the already released Infringing Works, the First and Second Single, but also proceeded to exploit the infringing material once again by including the two Singles and a third version on the EP.

72. Then, following the initial unauthorized release and commercial exploitation of the Singles and the EP, Defendants re-released the same Infringing Work as a track on the Album, which was released several days after the release of the EP. Each new release of the Infringing Works constitutes a new and additional copyright infringement, rather than a continuing infringement because they are distinct versions of the work as indicated by the distinct and separate ISRC associated with each new release.

73. Plaintiffs' unequivocal assertions of ownership and refusal of permission placed Defendants on actual notice of Plaintiffs' rights in the Sampled Works. Defendants' continued exploitation of the Infringing Works following express notice by Plaintiffs, including the release of the EP and subsequent Album was knowing intentional, willful, and undertaken in conscious disregard of Plaintiffs' rights, and supports a finding of willful infringement under the Copyright Act.

74. The Album release constituted a new and distinct act of copyright infringement under the Copyright Act, separate and apart from the initial infringement caused by the release of each of the Singles or the EP. The Album constituted a new product distributed through new marketing, promotional, and commercial avenues, and further expanded the reach and monetization of the Infringing Works.

75. Defendants' unauthorized commercial release, distribution, public performance, and display of the Sampled Works embodied in the Infringing Works violates Plaintiffs' exclusive rights in violation of the Copyright Act of 1976 (17 U.S.C. Sections 101, *et. seq*.).

76. Additionally, Defendants' reproduction, distribution, and public performance of the Sampled Works and Plaintiffs' Services in connection with the Infringing Works constitute a separate and distinct act of copyright infringement under the Copyright Act, 17 U.S.C. § 106, which grants copyright owners the exclusive rights to reproduce, distribute, and publicly perform their works. Each unauthorized act of exploitation, such as the re-release of the Singles on the EP and Album, gives rise to a new claim for Copyright Infringement against the Defendants, and each of them.

77. Defendants knowingly, intentionally and willfully capitalized on the Infringing Works a second and third time by promoting and releasing the EP and the Album through major distribution platforms, streaming services, and social media in connection with their commercial rollout. This conduct included, but was not limited to, facilitating streams, downloads, digital and physical sales, and using the EP and the Album in distinct marketing and promotional campaigns intended to maximize their visibility and profitability.

78. Each Defendant knowingly contributed to and/or materially participated in the release, promotion, and monetization of the Infringing Works, with full knowledge that the use of the Sampled Works and Plaintiffs' Services remained unauthorized and unlawful.

79. Moreover, Defendants' infringing acts include, but are not limited to: (a) reproducing and publicly performing the Sampled Works, and knowingly authorizing such reproduction and public performance at live events, public appearances, promotional activities, and through widespread dissemination to the public across digital platforms such as streaming services, video-sharing platforms, social media, and other Internet-based media; (b) authorizing and facilitating the commercial distribution and exploitation of the Infringing Works by engaging in and/or approving the manufacturing, sale, licensing, downloading, and streaming of the Infringing Works through major distribution outlets, including Spotify, Apple Music, YouTube, iTunes, and others; (c) utilizing the Sampled Works in connection with the commercial marketing and promotion including through digital releases, merchandise, advertisements, social media campaigns, and public performances intended to drive ticket and record sales; and (d) participating in and profiting from the infringing conduct, directly and indirectly, by incorporating Plaintiffs' Services and the Sampled Works into the creation, release, and promotion of the Infringing Works, thereby contributing to the widespread commercial success of the Album and the individual Defendants' public profiles and financial gain.

80. Each Defendant played a distinct and integral role in the creation, release, promotion, and monetization of the Infringing Works, and either directly committed the infringing acts or had knowledge of and materially contributed to such acts. Defendants

knowingly exploited Plaintiffs' Sampled Works without first securing a license or providing appropriate credit, compensation, and/or attribution for Plaintiffs' contributions to the Infringing Works.

81. The Defendants' actions were neither accidental nor negligent; instead, they were knowing, intentional, and willful. The Defendants undertook these actions with full awareness of Plaintiffs' authorship and ownership of the Sampled Works and Plaintiffs Services, and with a clear intention to commercialize and profit from the unlicensed use. Even before the commercial release of the EP or Album, Plaintiffs explicitly and repeatedly warned the Defendants, both orally and in writing, that they lacked the authority or license to use any Infringing Work containing the Sampled Works for any purpose without a fully executed written agreement. Yet despite these direct warnings and Plaintiffs' exclusive rights under the Copyright Act, the Defendants released, distributed, and commercially exploited the Infringing Works for their own financial benefit and re-released the works on the EP and subsequent Album. This willful behavior persisted even after Plaintiffs' post-release demands to cease the release and remove all Infringing Works from any and all platforms.

82. Plaintiffs continue to suffer irreparable harm, including, but not limited to, loss of income, dilution of credit and authorship, interference with their exclusive licensing rights, and reputational injury as a direct result of Defendants' unlawful and malicious conduct.

83. Pursuant to 17 U.S.C. § 504(b), Plaintiffs are entitled to recover actual damages sustained as a result of Defendants' unlawful conduct, including, but not limited to, the profits Defendants wrongfully earned through multiple unauthorized uses of both of Plaintiffs' copyrighted works, the Sampled Masters and the Sampled Composition. The full extent of such damages and ill-gotten gains will be established through evidence presented at the time of trial.

84. In the alternative to actual damages, and in light of the willful nature of Defendants' infringements, Plaintiffs seek statutory damages pursuant to 17 U.S.C. § 504(c), and respectfully requests the maximum statutory award of One Hundred and Fifty Thousand Dollars ($150,000.00) for each act of willful infringement of both the Sampled Masters and the

Sampled Composition, the precise number and scope of which will be determined at the time of trial.

85. Under 17 U.S.C. § 505, Plaintiffs are also entitled to recover full costs of this action, including reasonable attorneys' fees and related litigation costs and expenses incurred in enforcing their rights under the provisions of the Copyright Act.

86. Defendants' ongoing unauthorized use and exploitation of Plaintiffs' Services and the Sampled Works has caused, and continues to cause, irreparable harm that cannot be adequately remedied through monetary compensation alone, resulting in no adequate remedy at law. Accordingly, pursuant to 17 U.S.C. § 502, Plaintiffs seek both preliminary and permanent injunctive relief restraining Defendants, their agents, employees, successors, assigns, and all others acting in concert with them from reproducing, distributing, performing, selling, or otherwise exploiting the Infringing Works in any and all forms.

87. Furthermore, under 17 U.S.C. § 503, Plaintiffs request that the Court order the impoundment and/or destruction of all materials containing or embodying the Sampled Works and any of Plaintiffs' Services, including, without limitation: (i) all physical or digital copies, phonorecords, or derivative versions made or distributed in violation of Plaintiffs' copyright; and (ii) all masters, hard drives, audio stems, session files, digital assets, or other items from which such infringing material can be reproduced or disseminated.

## **<u>SECOND CAUSE OF ACTION</u>**

**(Vicarious Copyright Infringement)**

**(Against All Defendants)**

88. Plaintiffs repeat and re-allege paragraphs 1 through 67 as though fully set forth herein.

89. Based on information and belief, each of the Defendants at all times herein was acting as the agent and/or employee of some or all of the other Defendants and, in doing the things alleged herein, was clearly acting within the scope of such agency and employment relationship.

90. Based on information and belief, all Defendants share ownership and/or control in the Infringing Works, and the ownership interests between all Defendants are so intertwined that all Defendants must be held jointly and severally liable to Plaintiffs for the acts being complained of.

91. Based on information and belief, Defendants are vicariously liable for the copyright infringement alleged herein because at all relevant times they had the right and ability to supervise and/or control the infringing conduct and have a direct financial interest in the Infringing Works.

92. Based on information and belief, each Defendant knew, or should have known, that they, their agents, authorized representatives, customers, and other music users were not authorized to reproduce, publicly perform, distribute, create derivative works, profit from or use the Infringing Work in any way whatsoever without proper permission, consent, and specifically music license clearances authorizing such uses.

93. Based on information and belief, numerous derivative works were created illegally because Plaintiffs' protected works were reproduced and commercially distributed without proper authorization. Despite knowledge and notice of copyright infringement, Defendants have always had, and continue to have, the right to supervise and/or control the infringing acts being complained of and specifically the way in which distribution of the Infringing Work occurs to customers and end users.

94. Based on information and belief, and for the reasons stated above, Defendants have committed vicarious copyright infringement, and Plaintiffs have suffered and continue to suffer ongoing harm proximately caused by Defendants' infringements.

95. Based on information and belief, Defendants have obtained substantial monetary gain they would not have otherwise realized but for their intentional and willful infringement of Plaintiffs' copyrights.

96. Pursuant to 17 U.S.C. § 504(b), Plaintiffs are entitled to recover actual damages sustained as a result of Defendants' unlawful conduct, including, but not limited to, the profits Defendants wrongfully earned through multiple unauthorized uses of both of Plaintiffs'

copyrighted works, the Sampled Masters and the Sampled Composition. The full extent of such damages and ill-gotten gains will be established through evidence presented at the time of trial.

97. In the alternative to seeking actual damages, and in light of the willful nature of Defendants' infringements, Plaintiffs seek statutory damages pursuant to 17 U.S.C. § 504(c), and respectfully requests the maximum statutory award of One Hundred and Fifty Thousand Dollars ($150,000.00) for each act of willful infringement, the precise number and scope of which will be determined at the time of trial.

98. Under 17 U.S.C. § 505, Plaintiffs are also entitled to recover full costs of this action, including reasonable attorneys' fees and related litigation costs and expenses incurred in enforcing their rights under the provisions of the Copyright Act.

## THIRD CAUSE OF ACTION

**(Contributory Copyright Infringement)**

**(Against All Defendants)**

99. Plaintiffs repeat and re-allege paragraphs 1 through 67 as though fully set forth herein.

100. Based on information and belief, each of the Defendants was always herein acting as the agent and/or employee of some or all of the other Defendants, and in doing so, was clearly acting within the scope of such agency and employment relationship.

101. Based on information and belief, the ownership interests and employment relationships of all Defendants are so intertwined and convoluted that all Defendants clearly knew, must have reasonably known, or had reason to know, of the infringement given that the infringement is so obvious.

102. Based on information and belief, and for the reasons stated above, Defendants have committed contributory copyright infringement and Plaintiffs have suffered and continue to suffer ongoing harm proximately caused by Defendants' infringements.

103. Based on information and belief, Defendants have obtained substantial monetary gain they would not have otherwise realized but for their intentional and willful infringement of Plaintiffs' copyrights.

104. As such, pursuant to 17 U.S.C. § 504(b), Plaintiffs are entitled to recover actual damages sustained as a result of Defendants' unlawful conduct, including, but not limited to, the profits Defendants wrongfully earned through multiple unauthorized uses of both of Plaintiffs' copyrighted works, the Sampled Masters and the Sampled Composition. The full extent of such damages and ill-gotten gains will be established through evidence presented at the time of trial.

105. In the alternative to seeking actual damages, and in light of the willful nature of Defendants' infringements, Plaintiffs seek statutory damages pursuant to 17 U.S.C. § 504(c), and respectfully requests the maximum statutory award of One Hundred and Fifty Thousand Dollars ($150,000.00) for each act of willful infringement, the precise number and scope of which will be determined at the time of trial.

106. Under 17 U.S.C. § 505, Plaintiffs are also entitled to recover full costs of this action, including reasonable attorneys' fees and related litigation costs and expenses incurred in enforcing their rights under the provisions of the Copyright Act.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for judgment against all of the Defendants as follows:

**On All Claims For Relief:**

A. An award of damages pursuant to 17 U.S.C. Section 504(b), including actual damages, such as lost profits, lost opportunities, and loss of goodwill;

B. Disgorgement of Defendants' profits attributable to each infringement pursuant to 17 U.S.C. Section 504(b);

C. In the alternative, statutory damages for Defendants' willful copyright infringement in the amount of One Hundred and Fifty Thousand Dollars ($150,000.00) for each act of infringement pursuant to 17 U.S.C. Section 504(c);

D. An award of attorney's fees and costs pursuant to 17 U.S.C. Section 505 and under any other applicable law;

E. For pre-judgment and post-judgment interest according to law, as applicable;

F. Entry of both preliminary and permanent injunctive relief restraining Defendants, along with their representatives, employees, agents, officers, attorneys, successors, licensees, affiliates, assigns, and any individuals or entities acting in active concert or participation with them, from directly or indirectly engaging in, contributing to, encouraging, facilitating, inducing, or otherwise participating in any infringement of Plaintiffs' exclusive rights under the Copyright Act;

G. An order directing the seizure, impoundment, and/or appropriate disposition of all materials that infringe upon Plaintiffs' Sampled Works, including, but not limited to: (i) any and all unauthorized copies or phonorecords produced, distributed, or used in violation of Plaintiffs' copyright, and (ii) all source materials such as masters, audio files, recordings, or other tangible or digital media capable of reproducing or disseminating infringing content; and,

H. Granting such additional and further relief as the Court deems just, equitable, and proper under the circumstances.

///

///

///

///

///

///

///

///

///

///

///

///

Dated: November 4, 2026

Respectfully submitted,

**JOHNSON & JOHNSON LLP**

By: ______________________
Neville L. Johnson
Attorneys for Plaintiff, Jae Deal

**LAW OFFICES OF DAVID A. HELFANT**

By: ______________________
David A. Helfant,
Attorneys for Plaintiff, Jae Deal

**BRIGHTPOINT LAW**

By: Zachary T. Bohlender, Esq.
Zachary T. Bohlender,
Attorneys for Plaintiff, Marlon Barrow

**DEMAND FOR JURY TRIAL**

Pursuant to Federal Rule of Civil Procedure 38(b) and otherwise, Plaintiffs respectfully demand a trial by jury.

Dated: November 4, 2026

Respectfully submitted,

**JOHNSON & JOHNSON LLP**

By: ______________________
Neville L. Johnson
Attorneys for Plaintiff, Jae Deal

**LAW OFFICES OF DAVID A. HELFANT**

By: ______________________
David A. Helfant,
Attorneys for Plaintiff, Jae Deal

**BRIGHTPOINT LAW**

By: Zachary T. Bohlender, Esq.
Zachary T. Bohlender,
Attorneys for Plaintiff, Marlon Barrow